IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTEN WHITING | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SAFE AUTO INSURANCE COMPANY | : | NO.  15-6791 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                                                                        **July 20, 2016**

This action arises from a dispute between Kristen Whiting and Safe Auto Insurance Company ("Safe Auto"), regarding a policy of insurance Safe Auto issued for a car co-owned by Whiting.  Safe Auto has moved to dismiss all three of the claims raised against it in the Corrected Amended Complaint.  For the following reasons, the Motion is granted in part and denied in part.

**I.     BACKGROUND**

The Corrected Amended Complaint alleges the following facts.  On September 13, 2012, Plaintiff Kristen Whiting purchased a 2005 Pontiac GTO (the "Pontiac") with her auto mechanic, Nathaniel Shoatz.  (Corrected Am. Compl. ¶ 5.)  Shoatz subsequently called Defendant Safe Auto without Plaintiff's knowledge or consent, for the purpose of obtaining insurance for the Pontiac.  (<u>Id.</u> ¶¶ 6, 12.)  During this call, Shoatz claimed to be a man named "John Whiting." (<u>Id.</u> ¶ 6.)  Shoatz spoke with a Safe Auto customer service representative named Curtis, and provided "John Whiting's" personal information, including social security number, address, date of birth and occupation.  (<u>Id.</u> ¶¶ 7-9.)  Shoatz also identified Plaintiff Kristen Whiting as his wife and provided a date of birth, occupation, social security number, and driver's license number for her.  (<u>Id.</u> ¶ 11.)  Curtis gave Shoatz a quote for the requested insurance, which Shoatz agreed to pay for by check.  (<u>Id.</u> ¶ 12.)  Shoatz gave Curtis a check routing number, which Curtis

discovered was incorrect. (Id. ¶ 13.) Shoatz then gave Curtis two other erroneous routing numbers. (Id. ¶ 14.) Since he was unable to complete his insurance application, Shoatz asked Curtis to save the information he had already provided (identified as Claim No. 593495, Policy Inception Dated September 13), and told Curtis that he would call back in a few minutes. (Id. ¶¶ 15-16.)

On September 14, 2012, Shoatz called Safe Auto for the second time, once again purporting to be "John Whiting," and spoke with a customer service representative named Laura. (Id. ¶¶ 17-18.) Laura informed "John Whiting" that his quote was already in Safe Auto's system. (Id. ¶ 21.) During their conversation (identified as Claim No. 593495, Policy Inception Dated September 14), Shoatz again provided Safe Auto with what he claimed was his address and date of birth, as well as Plaintiff's date of birth, Plaintiff's social security number, and Plaintiff's driver's license number. (Id. ¶¶ 19-20, 22.) Laura immediately recognized that the address, social security number, and date of birth that Shoatz gave her for "John Whiting" as well as the social security number and driver's license number that he gave her for Kristen Whiting, were different from the information that Shoatz had provided to Curtis the previous day. (Id. ¶ 20; Ex. B at 18-20, 22.) Regardless of these inconsistencies, Laura processed "John Whiting's" application for insurance and approved "John Whiting's" policy. (Id. ¶ 23.) Neither of the Safe Auto customer service representatives who spoke with Shoatz requested any documentation of the driver's license numbers, social security numbers, or addresses that Shoatz gave them, nor did they ask to speak with Plaintiff to verify the inconsistent information provided by Shoatz. (Id. ¶¶ 24-25.)

On September 16, 2012, "John Whiting" was involved in a car accident in which the Pontiac was damaged. (Id. ¶ 27.) On April 3, 2013, Safe Auto sued Plaintiff in Philadelphia

Municipal Court to recover the cost of repairs to the Pontiac. (Id. ¶ 29.) On October 7, 2013, Safe Auto obtained a judgment in the amount of $6,078.00 against Plaintiff for the cost of the repairs to the Pontiac. (Id. ¶ 31.) Plaintiff's driver's license was suspended after Safe Auto reported the Municipal Court Judgment against her to the Pennsylvania Department of Transportation ("PennDOT"). (Id. ¶ 32.) Plaintiff filed a timely appeal of the judgement to the Philadelphia Court of Common Pleas. (Id. ¶ 33.) On October 15, 2015, Safe Auto filed a Civil Action Complaint against Plaintiff in the Philadelphia Court of Common Pleas. (Id. ¶ 37.) On October 20, 2015, Plaintiff's counsel faxed to Safe Auto's counsel a copy of her verified Answer containing New Matter and Counterclaims, along with copies of the recorded conversations between Shoatz and Safe Auto's employees, and a letter threatening to sue Safe Auto unless the lawsuit was withdrawn. (Id. ¶¶ 38-40.) Safe Auto's counsel subsequently informed Plaintiff's counsel that Safe Auto intended to withdraw the lawsuit. (Id. ¶ 41.) On November 2, 2015, Safe Auto discontinued its lawsuit against Plaintiff. (Id. ¶ 42.)

The Corrected Amended Complaint asserts three claims against Safe Auto pursuant to Pennsylvania law. Count I asserts a claim for wrongful use of civil proceedings; Count II asserts a claim for defamation; and Count III asserts a claim for negligence. Safe Auto has moved to dismiss all three claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v.

White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff."  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2), and Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'"  Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (alteration in original) (quoting Iqbal, 556 U.S. at 678).  "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 786-87 (quoting Iqbal, 556 U.S. at 679).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a

right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

#### A. Wrongful Use of Civil Proceedings

Count I of the Corrected Amended Complaint asserts a claim against Safe Auto for wrongful use of civil proceedings pursuant to the Dragonetti Act, 42 Pa. Cons. Stat. Ann. § 8351. The Dragonetti Act "'codified the common-law cause of action for wrongful use of civil proceedings.'" Di Loreto v. Costigan, 600 F. Supp. 2d 671, 686 (E.D. Pa.), aff'd, 351 F. App'x 747 (3d Cir. 2009) (quoting Schmidt v. Currie, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005), aff'd, 217 F. App'x 153 (3d Cir. 2007)). "'The tort is interpreted and applied broadly against those who use legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process.'" Id. at 686-87 (quoting Schmidt, 470 F. Supp. 2d at 480). The Dragonetti Act provides as follows:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:
>
> (1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. Ann. § 8351(a). "'[A] party seeking redress under [the] Dragonetti [Act] bears a heavy burden,' because the plaintiff need not only demonstrate either [lack of] probable cause or gross negligence, but must also prove the underlying action was filed for an improper purpose." Schmidt, 217 F. App'x at 155 (first three alterations in original) (quoting U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002); and citing Broadwater v. Sentner, 725

A.2d 779, 784 (Pa. Super. Ct. 1999)). "'Pennsylvania courts have defined gross negligence in the context of Dragonetti claims to mean the 'want of scant care' or 'lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party. . . .'" Bobrick Corp. v. Santana Prods., Inc., 698 F. Supp. 2d 479, 497 (M.D. Pa. 2010), aff'd, 422 F. App'x 84 (3d Cir. 2011) (quoting Schmidt, 470 F. Supp. 2d at 480). If the plaintiff's claim is based on lack of probable cause rather than gross negligence, the plaintiff must show that "the defendant 'had no reasonable basis for filing the underlying action.'" Villari Brandes & Giannone, PC v. Wells Fargo Fin. Leasing, Inc., Civ. A. No. 13-297, 2013 WL 5468497, at *5 (E.D. Pa. Sept. 30, 2013) (quoting Broadwater, 725 A.2d at 783).

Safe Auto argues, *inter alia*, that the Corrected Amended Complaint fails to state a claim for wrongful use of civil proceedings upon which relief can be granted because it (1) does not allege that Safe Auto acted with malice in filing its lawsuit against Plaintiff and (2) does not allege facts that support a plausible claim that Safe Auto acted with gross negligence. Plaintiff's Dragonetti Act claim is based solely on gross negligence and does not rely on allegations of malice. Thus we need not address that aspect of Safe Auto's argument any further.

Plaintiff contends that Safe Auto wrongfully used civil proceedings insofar as it sued Plaintiff for reimbursement of the money it spent for repairs to the Pontiac. Plaintiff argues that the Corrected Amended Complaint sufficiently alleges gross negligence because it alleges facts that would establish that Safe Auto was grossly negligent in issuing insurance to "John Whiting" without obtaining confirmation of the contradictory information that he provided when he applied for the insurance. However, to state a plausible claim for relief under the Dragonetti Act, a complaint must allege that the defendant acted with gross negligence in initiating or continuing civil proceedings. 42 Pa. Cons. Stat. Ann. § 8351(a). Thus, in order to state a Dragonetti Act

claim upon which relief can be granted in this case, the Corrected Amended Complaint must plausibly allege facts that would establish that Safe Auto initiated its lawsuit against Plaintiff without even slight diligence or care, or in reckless disregard of its legal duties. See Bobrick Corp., 698 F. Supp. 2d at 497 (quotation omitted). The Corrected Amended Complaint alleges, with respect to Safe Auto's initiation of its lawsuit against Plaintiff, that Safe Auto issued insurance for the Pontiac, that Plaintiff was a co-owner of the Pontiac, that Plaintiff was an insured under Safe Auto's policy of insurance for the Pontiac, that the Pontiac was damaged in an automobile accident after Safe Auto issued the insurance, and that Safe Auto subsequently sued Plaintiff for the cost of repairs to the Pontiac. (Corrected Am. Compl. ¶¶ 5, 27-30.) We conclude that these allegations are not sufficient to establish that Safe Auto was grossly negligent in filing suit against Plaintiff.[1] We further conclude, accordingly, that the Corrected Amended Complaint fails to state a facially plausible claim for wrongful use of civil proceedings under the Dragonetti Act. We thus grant the Motion to Dismiss as to Count I of the Corrected Amended Complaint.

B. Defamation

Count II of the Corrected Amended Complaint asserts a claim against Safe Auto for defamation. Defamation is "the tort of detracting from a person's reputation, or injuring a person's character, fame or reputation, by false and malicious statements." Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. Ct. 2008) (citing Zartman v. Lehigh Cnty. Humane

---

[1] We further observe that the Corrected Amended Complaint contains no allegations of facts that would establish that Safe Auto filed its suit against Plaintiff for an improper purpose, i.e., a purpose other than that of recovering from Plaintiff the amount it spent to repair the Pontiac, which is another of the required elements of a Dragonetti Act claim. See 42 Pa. Cons. Stat. Ann. § 8351(a).

7

Soc., 482 A.2d 262, 268 (Pa. Super. Ct. 1984)). In order to state a facially plausible claim for defamation, a complaint must allege facts that would establish the following elements:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. Ann. § 8343(a).

Safe Auto argues that Count II fails to state a claim for defamation upon which relief can be granted because the Corrected Amended Complaint does not allege that it has made any statements about Plaintiff that were actually defamatory. "Whether a communication is capable of defamatory meaning is a 'threshold issue' to be determined by the court." Burton v. Teleflex Inc., 707 F.3d 417, 434 (3d Cir. 2013) (citing Kurowski v. Burroughs, 994 A.2d 611, 617 (Pa. Super. Ct. 2010); Blackwell v. Eskin, 916 A.2d 1123, 1125 (Pa. Super. Ct. 2007)). "In order to be actionable, the words must be untrue, unjustifiable, and injurious to the reputation of another." Joseph, 959 A.2d at 334 (citing 42 Pa. Cons. Stat. Ann. § 8343(a)). "The plaintiff bears the burden of making this showing and '[i]f the court determines that the challenged publication is not capable of defamatory meaning, there is no basis for the matter to proceed to trial.'" Burton, 707 F.3d at 434 (quoting Kurowski, 994 A.2d at 617).

Plaintiff argues that the Corrected Amended Complaint alleges that Safe Auto defamed her when it reported the Municipal Court judgment to PennDOT[2] because the judgment was

---

[2] Pennsylvania permits a judgment creditor, such as Safe Auto, to report an unpaid judgment arising from a motor vehicle accident to PennDOT. See 75 Pa. Cons. Stat. Ann. § 1771(a). After receiving a certified copy of the judgment, PennDOT is required to "suspend the operating privilege of each person against whom the judgment was rendered." Id. § 1772. The

predicated on proven misrepresentations and lies and resulted from Safe Auto's failure to challenge "the glaring inconsistencies in" Shoatz's application for auto insurance. (Compl. ¶ 54.) However, the Corrected Amended Complaint alleges nothing about this communication that would support a conclusion that the communication was untrue as is required for a statement to be defamatory. See Joseph, 959 A.2d at 334 (citing 42 Pa. Cons. Stat. Ann. § 8343(a)). The Corrected Amended Complaint alleges that Safe Auto, in fact, obtained a judgment against Plaintiff in the Philadelphia Municipal Court and that Safe Auto reported that existing judgment to PennDOT. (Compl. ¶¶ 31-32, 50.) While the Corrected Amended Complaint alleges that the judgment was predicated on misrepresentations and lies, even accepting that allegation as true, it in no way undermines the truth of Safe Auto's statement to PennDOT that there was a judgment against Plaintiff. We conclude that the Corrected Amended Complaint thus fails to allege facts that would establish the first element of a claim for defamation pursuant to 42 Pa. Cons. Stat. Ann. § 8343(a), i.e., that the nature of the communication itself was defamatory. We further conclude, accordingly, that the Corrected Amended Complaint fails to state a facially plausible claim for defamation under Pennsylvania law. We thus grant the Motion to Dismiss as to Count II of the Corrected Amended Complaint.

    C.    <u>Negligence</u>

Count III of the Corrected Amended Complaint asserts a claim against Safe Auto for negligence in issuing the automobile insurance policy to Shoatz. (Corrected Am. Compl. ¶ 57.) In order to state a negligence claim under Pennsylvania law, a complaint must allege (1) a duty owed to the plaintiff by the defendant; (2) "a breach of that duty [;]" (3) "a causal connection" between the breach and the resulting injury; and (4) actual loss or damages. City of Philadelphia

---

operating privileges will not be restored until the judgment has been either stayed or satisfied in full. See id. § 1773.

v. Beretta U.S.A. Corp., 277 F.3d 415, 422 n.9 (3d Cir. 2002) (citing Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998)); see also Davenport v. Medtronic, Inc., 302 F.Supp.2d 419, 439 (E.D. Pa. 2004) (citing Morena v. S. Hills Health Sys., 462 A.2d 680, 684 n.5 (Pa. 1983)). Safe Auto argues that Count III fails to state a facially plausible claim for negligence because, based on the facts alleged in the Corrected Amended Complaint, it was not foreseeable to Safe Auto that Shoatz would fraudulently assert that he was Plaintiff's husband, "John Whiting," in order to obtain insurance for the Pontiac that Shoatz and Plaintiff co-owned. "Foreseeability is a legal requirement before recovery can be had." Citizens Bank of Pa. v. Reimbursement Techs., Inc., 609 F. App'x 88, 92 (3d Cir. 2015) (citing Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1369 (3d Cir. 1993)). Indeed, it is both an integral part of the court's determination of whether a defendant owes a duty to a plaintiff and part of "the proximate cause inquiry ordinarily undertaken by jurors." Seebold v. Prison Health Servs., Inc., 57 A.3d 1232, 1249 n.26 (Pa. 2012). While Safe Auto does not specify whether its argument applies to duty or proximate cause, since proximate cause is a jury issue, we analyze its argument only in connection with whether Safe Auto owed a duty to Plaintiff.

"'Whether a duty exists under a particular set of facts is a question of law.'" Fid. Nat'l Title Ins. Co. v. Craven, Civ. A. No. 12-4306, 2016 WL 215068, at *6 (E.D. Pa. Jan. 19, 2016) (quoting Herczeg v. Hampton Twp. Mun. Auth., 766 A.2d 866, 871 (Pa. Super. Ct. 2001); and citing Rossi v. Schlarbaum, 600 F. Supp. 2d 650, 657 (E.D. Pa. 2009)). We weigh the following factors in determining whether Safe Auto owed a duty to Plaintiff: "'(1) the relationship between the parties; (2) the social value of the actor's conduct; (3) the nature of the risk imposed and the foreseeability of the harm incurred; (4) the consequences of imposing a duty; and (5) the overall public interest in the proposed solution.'" Id. (quoting Althaus ex rel. Althaus v. Cohen,

756 A.2d 1166, 1169 (Pa. 2000)). "'[T]he type of foreseeability that determines a duty of care, as *opposed to proximate cause*, is not dependent on the foreseeability of a specific event.'" Kennedy v. Robert Morris Univ., 133 A.3d 38, 43 (Pa. Super. Ct. 2016) (quoting Kleinknecht, 989 F.2d at 1369). "Rather, in the context of duty, '[t]he concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury.'" Citizens Bank, 609 F. App'x at 92 (alteration in original) (quoting Kleinknecht, 989 F.2d at 1369).

      Here, Safe Auto argues that it was not foreseeable that Shoatz would fraudulently claim to be Plaintiff's husband in order to obtain insurance from Safe Auto. It does not address the foreseeability of the general type of risk at issue in this case, i.e., the risk that someone applying for insurance would make fraudulent statements to Safe Auto in connection with his or her application. Moreover, the United States Court of Appeals for the Third Circuit has instructed that "no individual factor is dispositive" in determining whether the defendant owes a duty to the plaintiff and that "'a duty will be found to exist [only] where the balance of [the specified] factors weighs in favor of placing such burden on a defendant.'" Id. (quoting Kleinknecht, 989 F.2d at 1369). Because Safe Auto has not addressed any of the factors regarding duty other than foreseeability, we will not determine as a matter of law whether Safe Auto owed a duty to Plaintiff. Safe Auto's Motion to Dismiss is, therefore, denied as to its argument that Count III of the Corrected Amended Complaint fails to state a facially plausible claim of negligence against Safe Auto because it was not foreseeable to Safe Auto that Shoatz would fraudulently assert that he was Plaintiff's husband, "John Whiting," in order to obtain insurance for the Pontiac.

      Safe Auto also argues that the Corrected Amended Complaint fails to state a claim for negligence upon which relief can be granted because Shoatz's fraud was the superseding cause

11

of Plaintiff's injuries.[3]  The Third Circuit has explained that "'[a]n intervening act of a third party, which actively operates to produce harm **after** the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about.'"  Pure Earth, Inc. v. Call, 618 F. App'x 119, 125 (3d Cir. 2015) (emphasis added) (quoting Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004)).  The Corrected Amended Complaint alleges that Shoatz's fraud occurred either prior to or contemporaneously with Safe Auto's negligence.  Therefore, it cannot be a superseding cause that prevents Safe Auto from being liable for its alleged negligence in this case.  Consequently, Safe Auto's Motion to Dismiss is denied as to its argument that Count III of the Corrected Amended Complaint fails to state a claim upon which relief can be granted because Shoatz's fraud is a superseding cause of Plaintiff's injuries.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss is granted as to Counts I and II and denied as to Count III.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.

---

[3] Safe Auto relies on Spowal v. ITW Food Equip. Grp., LLC, 943 F. Supp. 2d 550 (W.D. Pa. 2013), to support this argument.  However, the material cited by Safe Auto in its Memorandum of Law actually appears in Calex Express v. Bank of America, 401 F. Supp. 2d 407 (M.D. Pa. 2005).